```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
C.M,                                                        :
                                                            :
                                Plaintiff,                  :
                                                            :    20-CV-751 (VSB)
                    - against -                             :
                                                            :    OPINION & ORDER
                                                            :
THE ESTATE OF DR. REGINALD                                  :
ARCHIBALD; and THE MADISON                                  :
SQUARE BOYS AND GIRLS CLUB,                                 :
INC.,                                                       :
                                                            :
                                Defendants.                 :
                                                            :
------------------------------------------------------------X
```

Appearances:

Renner Kincaid Walker
Corey Matthew Stern
Levy Konigsberg LLP
New York, New York
*Counsel for Plaintiff*

Mary Elizabeth Mulligan
Bonnie Melissa Baker
Danielle Elizabeth Tepper
John Nicholas Orsini
Friedman Kaplan Seiler & Adelman LLP
New York, New York
*Counsel for Defendant Madison Square Boys and Girls Club, Inc.*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff C.M. ("Plaintiff") brings this action against Defendants the Estate of Dr. Reginald Archibald (the "Estate") and the Madison Square Boys and Girls Club, Inc. ("Madison") asserting claims of sexual abuse, assault, battery, negligence, and gross negligence. Before me is Madison's motion to dismiss Plaintiff's Complaint as against Madison. Because

Plaintiff has plausibly alleged negligence and gross negligence on the theory that Madison negligently supervised and retained Dr. Archibald, but has failed to allege plausible claims for sexual abuse, assault, and battery on a vicarious liability theory and claims of negligence and gross negligence on a negligent referral theory, Madison's motion to dismiss is GRANTED IN PART and DENIED IN PART.

I. **Factual Background and Procedural History**[1]

This is a case that involves graphic allegations of predation and sexual abuse committed by a now-deceased doctor, Dr. Reginald Archibald ("Dr. Archibald"), against children, including underdeveloped children, entrusted to his medical care. (*See generally* Doc. 1 ("Compl.").) I recount only those factual details that are strictly necessary for deciding this motion.

Dr. Archibald, a preeminent pediatric endocrinologist, specialized in studying and treating "children of short stature." (*Id.* ¶ 19.) He practiced for over 40 years and died in 2007. (*See id.* ¶¶ 8, 23.) Dr. Archibald was primarily employed by the Rockefeller University Hospital ("Rockefeller"). (*See id.* ¶ 36.) From the early 1940s through the 1960s, Dr. Archibald also worked as a doctor for Madison, first as a volunteer, and later as an employee and member of its Board of Trustees. (*See id.* ¶¶ 2, 37, 50, 52.)[2]

The Madison Square Boys Club was founded in 1884 and changed its name to the Madison Square Boys and Girls Club, Inc. in 1985. (*See id.* ¶¶ 17, 18.) Madison's stated mission was to "save and enhance the lives of New York City boys . . . who by reason of economic or social factors are most in need of its services." (*Id.* ¶ 39.) Madison provided young

---

[1] The facts set forth herein are taken from allegations in the Complaint. (*See* Compl.) I assume Plaintiff's allegations in the Complaint to be true for purposes of the motion. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, my reference to these allegations should be not construed as a finding as to their veracity, and I make no such findings.

[2] *See infra* note 6.

boys a "positive place to belong" in order "to keep boys busy and out of trouble." (*Id.* ¶ 3.) In 1939, Madison opened a "Clubhouse" on 29th Street in Manhattan, which included a swimming pool, gymnasium, locker room, and health clinic, among other amenities. (*See id.* ¶¶ 3, 40, 44.) Madison required that boys undergo a physical examination at a Madison health clinic before using the swimming pool or gymnasium, and annually thereafter. (*See id.* ¶¶ 49, 63.) Dr. Archibald conducted some of these medical exams in an office that Madison provided him. (*See id.* ¶¶ 3, 50–53, 63, 164).

Like many of Dr. Archibald's patients, Plaintiff was short for his age; as a Holocaust survivor, Plaintiff had suffered from undernourishment in early childhood. (*See id.* ¶¶ 82–83, 110.) Plaintiff first met Dr. Archibald at Madison in 1952, when Dr. Archibald conducted Plaintiff's required physical exam. (*See id.* ¶¶ 85, 88, 89, 114.) At the time, Plaintiff was 12 years old. (*See id.* ¶ 85.) Plaintiff was led into a room next to the gymnasium and left alone in the room with Dr. Archibald. (*See id.* ¶¶ 91, 94, 95.) Dr. Archibald instructed Plaintiff to undress and stand against the wall, and Dr. Archibald took several photos of the Plaintiff naked. (*See id.* ¶¶ 97, 99.) Dr. Archibald then molested Plaintiff. (*See id.* ¶¶ 100–07.) Plaintiff "understood that Dr. Archibald was getting sexual gratification from the assault." (*Id.* ¶ 102.) Plaintiff "wanted it to stop but felt helpless and powerless to do anything." (*Id.* ¶ 107.) Later, "on [Madison's] recommendation," Plaintiff's parents asked Dr. Archibald to evaluate and treat Plaintiff at Rockefeller. (*Id.* ¶¶ 110, 111.) Dr. Archibald molested Plaintiff at Rockefeller on at least three more occasions between 1953 and 1958. (*See id.* ¶¶ 110–16.) Plaintiff has experienced flashbacks and "persistent, lifelong feelings of humiliation, shame, vulnerability, anger, and helplessness" because of Dr. Archibald's assaults. (*Id.* ¶¶ 117, 118; *see also id.* ¶¶ 119–23, 128, 129.)

Dr. Archibald abused untold numbers of other children in the same manner. (*See id.* ¶¶ 4, 5, 22–35, 66–67.)[3] Dr. Archibald also took nude photographs of other boys. (*See id.* ¶ 67.) Dr. Archibald kept his photography and lighting equipment "in plain view in his office" and published at least two articles containing photos of naked boys. (*Id.* ¶¶ 32, 68.) Additionally, Madison referred other boys to Dr. Archibald's practice at Rockefeller. (*See id.* ¶¶ 71–74.)

"Dr. Archibald's actions were well known" at Madison. (*Id.* ¶ 69.) Dr. Archibald was at Madison most Saturdays. (*See id.* ¶ 55.) Madison required boys to swim naked in the pool, (*see id.* ¶ 58), and Dr. Archibald "often stood on the deck of the [Madison] pool, watching young boys swim and frolic naked," (*id.* ¶ 56), and "often linger[ed] in the locker room, watching the boys as they removed their clothes," (*id.* ¶ 62). Dr. Archibald was known by the boys at Madison as the "pool doctor," and the boys also called him "Dr. Archie-Balls." (*Id.* ¶¶ 57, 69.) Boys "discussed strategies to avoid" his required physical exams. (*Id.* ¶ 69.) Plaintiff alleges "[u]pon information and belief, in or about the 1950s, one of the boys reported to the [Madison] Swim Director that Dr. Archibald was touching boys' genitals. The Swim Director told him not to worry about it." (*Id.* ¶ 70.)

---

[3] As the parties suggest in their briefings, (*e.g.*, Doc. 17, at 13–14; Doc. 20, at 22–24), this complaint is one of several alleging sexual abuse by Dr. Archibald. *E.g.*, Original Complaint, *P.N. v. Rockefeller Institute*, No. 19-CV-10493 (ALC) (S.D.N.Y. Nov. 12, 2019), Doc. 1 (federal lawsuit arising from Dr. Archibald's alleged sexual abuse of children at Rockefeller Hospital); Original Complaint, *N.R. v. Estate of Dr. Reginald Archibald*, No. 19-CV-07609 (ALC) (S.D.N.Y. August 14, 2019), Doc. 1 (same); Original Complaint, *Poppel v. Rockefeller University Hospital*, No. 19-CV-01403 (ALC) (S.D.N.Y. Feb. 23, 2019), Doc. 1 (same); Summons and Complaint, *Cusumano v. Madison Square Boys & Girls Club*, No. 951255/2021 (N.Y. Sup. Ct. Aug. 11, 2021), Doc. 1 (state lawsuit arising from Dr. Archibald's alleged sexual abuse of children at Madison); Summons and Complaint, *T.B. v. Madison Square Boys & Girls Club*, No. 950155/2019 (N.Y. Sup. Ct. Sept. 23, 2019), Doc. 1 (same); Summons and Complaint, *Liguori v. Madison Square Boys & Girls Club*, No. 951259/2021 (N.Y. Sup. Ct. Aug. 11, 2021), Doc. 1 (state lawsuit arising from Dr. Archibald's alleged sexual abuse of children at both Madison and Rockefeller); Summons and Verified Complaint, *Castrillo v. Madison Square Boys & Girls Club, Inc.*, No. 950079/2021 (N.Y. Sup. Ct. Mar. 11, 2021), Doc. 1 (same). Some of these complaints also allege sexual abuse by Nicholas Antonucci at Madison, discussed *infra*. *E.g.*, *Cusumano*, No. 951255/2021; *T.B.*, No. 950155/2019; *Liguori*, No. 951259/2021; *Castrillo*, No. 950079/2021. I consider the allegations in Complaint without regard to allegations made in these other cases.

In addition to Dr. Archibald, non-party Nicholas "Lefty" Antonucci, the Madison Gym Director and Basketball Coach, "grabbed and fondled boys' genitals . . . in open view of other [Madison] members and staff." (*Id.* ¶¶ 77–78; *see also id.* ¶¶ 79–80.) Antonucci was also "frequently naked in the locker room with the boys." (*Id.* ¶ 81.)

As previously mentioned, Dr. Archibald died in 2007. (*See id.* ¶¶ 8.) On January 28, 2020, Plaintiff brought claims against Madison for vicarious liability for sexual abuse, (*id.* ¶¶ 130–37), assault, (*id.* ¶¶ 138–44), and battery, (*id.* ¶¶ 145–54);[4] as well as claims for negligence, (*id.* ¶¶ 155–85), and gross negligence, (*id.* ¶¶ 192–202). On April 29, 2020, Madison filed a motion to dismiss, (Doc. 16), and an accompanying memorandum of law, (Doc. 17 ("Def.'s Mem.").) On May 13, 2020, Plaintiff filed an opposition brief. (Doc. 20 ("Pl.'s Opp.").) On May 28, 2020, Madison filed a reply brief. (Doc. 23 ("Def.'s Reply").)[5]

## II.   Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the

---

[4] Plaintiff's Count V is for "vicarious liability." (Compl. ¶¶ 186–91.) Vicarious liability "is a theory of liability, not a freestanding cause of action." *Scott v. City of Mount Vernon*, No. 14-CV-4441 (KMK), 2017 WL 1194490, at *25 (S.D.N.Y. Mar. 30, 2017) (collecting cases). Therefore, I consider Plaintiff's allegations as to vicarious liability as incorporated into its allegations against Madison for Dr. Archibald's sexual abuse, assault, and battery.

[5] Plaintiff also sued Dr. Archibald's Estate for sexual abuse, assault, battery, and gross negligence. (*See generally* Compl.) However, Plaintiff never filed an affidavit of service for the estate, and the Estate has never appeared in this action. Plaintiff noted in his briefing that "[b]ecause Archibald has died and his estate may be closed, he may be the ultimate impecunious perpetrator." (Pl.'s Opp. 12.)

full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237.  "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks omitted).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

**III.     Discussion**

As a preliminary matter, Madison does not contest—and I find—that Plaintiff's suit is timely under the New York Child Victims Act ("CVA").  (*See* Def.'s Mem. 3–4.)  The CVA, "which became effective on February 14, 2019, extended the statute of limitations for certain state law claims of sexual abuse; it 'requires revived claims to be brought not earlier than six months after and not later than one year and six months after the effective date of the law.'" *Caldwell v. City of New York*, 21-CV-6560 (LTS), 2021 WL 3887678, at *2 (S.D.N.Y. Aug. 27, 2021) (footnote omitted) (quoting N.Y. C.P.L.R. § 214-g).  Plaintiff's suit, filed on January 28, 2020, was timely filed.

**A.     *Vicarious Liability***

"Where the acts of 'employees' are concerned, an employer can be held vicariously liable

under principles of *respondeat superior* for acts committed *within* the scope of the employee's employment, or may be held directly liable for 'negligent hiring, retention, or supervision' for acts committed *outside* that scope." *Williams v. Boulevard Lines, Inc.*, No. 10 Civ. 2924(DF), 2013 WL 1180389, at *13 n.10 (S.D.N.Y. Mar. 12, 2013). "To state claim for respondeat superior, a plaintiff must plead facts showing, among other things, that the tortious conduct causing the injury was undertaken within the scope of the employee's duties to the employer and was thus in furtherance of the employer's interests." *Chau v. Donovan*, 357 F. Supp. 3d 276, 290 (S.D.N.Y. 2019) (internal quotation marks omitted).

Plaintiff seeks to hold Madison liable for Dr. Archibald's sexual abuse, assault, and battery under a vicarious liability theory. (*See* Compl. ¶¶ 186–91.) Plaintiff argues, as he must, that "Dr. Archibald's sexual abuse was in the scope of his employment." (Pl.'s Opp. 7.) Although Plaintiff cites persuasive authority from other jurisdictions, (*see id.* 7–8), his analysis is incorrect as a matter of New York law. "New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." *Swarna v. Al-Awadi*, 622 F.3d 123, 144–45 (2d Cir. 2010) (internal quotation marks omitted) (collecting cases); *see also Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014) ("No decision in New York has been cited to date in which the doctrine of respondeat superior was held to apply to sexual assault."). Dr. Archibald had no legitimate medical or professional reason for his tortious conduct; he molested Plaintiff purely for his own gratification. (*See, e.g.*, Compl. ¶¶ 102, 124.) Therefore, "it is clear that the employee here departed from his duties for solely personal motives unrelated to the furtherance of the [employer's] business." *Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932, 933 (1999) (citation omitted); *see also N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247,

251 (2002) ("A sexual assault perpetrated by a hospital employee is not in furtherance of hospital business and is a clear departure from the scope of employment").

Alternatively, Plaintiff argues that, even if Dr. Archibald's conduct were outside the scope of his employment, New York law still allows employers to be held vicariously liable for such tortious conduct in "unusual situations." (Pl.'s Opp. 13.) Plaintiff relies on one case from over a century ago, *Stone v. William M. Eisen Co.*, 219 N.Y. 205 (1916). However, *Stone* is no longer good law. *See Poppel v. Est. of Archibald*, No. 1:19-CV-01403 (ALC), 2020 WL 2749719, at *5 (S.D.N.Y. May 27, 2020) ("New York courts have . . . set aside *Stone* in light of [more recent precedents].") (citing *N.X.*, 97 N.Y.2d at 251; *Judith*, 93 N.Y.2d at 932; *Doe v. Westfall Health Care Ctr., Inc.*, 755 N.Y.S.2d 769, 776 (4th Dep't 1997)).

Accordingly, I must dismiss Plaintiff's claims against Madison for vicarious liability for Dr. Archibald's sexual abuse, assault, and battery.

### B. *Negligence*

"To prevail on a negligence claim, a plaintiff must establish (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Ritchie Cap. Mgmt., L.L.C. v. Gen. Elec. Cap. Corp.*, 121 F. Supp. 3d 321, 332 (S.D.N.Y. 2015) (internal quotation marks omitted). Plaintiff puts forth two theories of negligence liability and also brings a claim of gross negligence. I discuss each in turn.

#### 1. Negligent Supervision and Retention

"Because a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party." *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 177 (2d Cir. 2013) (internal quotation marks omitted). "[A]bsent a special relationship, a defendant generally has no duty to control

8

the conduct of third persons so as to prevent them from harming others, even where as a practical matter defendant can exercise such control." *Rabin v. Dow Jones & Co.*, No. 14–cv–4498, 2014 WL 5017841, at *2 (S.D.N.Y. Sept. 23, 2014) (internal quotation marks omitted). I find that Madison owed Plaintiff a duty of care at least during the time that Plaintiff was under Madison's direct charge. *Cf. Pratt v. Robinson*, 39 N.Y.2d 554, 560 (1976) (noting there is a "common-law custodial duty" that "requires a school to act when a child, *while in its charge*, is threatened by the negligence of a third party"); *see also Mirand v. City of New York*, 84 N.Y.2d 44, 49 (1994) ("A teacher owes it to his or her charges to exercise such care of them as a parent of ordinary prudence would observe in comparable circumstances." (internal quotation marks omitted)); *Phelps v. Boy Scouts of Am.*, 762 N.Y.S.2d 32, 33 (1st Dep't 2003) ("[A] summer camp is duty-bound to supervise its campers as would a parent of ordinary prudence in comparable circumstances." (citation omitted)). Indeed, Madison does not appear to dispute that it owed a duty to Plaintiff while he was at Madison. (*See* Def.'s Mem. 19–21.)

For a negligent supervision and retention claim under New York law, Plaintiff must establish, "in addition to the standard elements of negligence," "(1) that the tortfeasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and, (3) that the tort was committed on the employer's premises or with the employer's chattels." *Alsaud*, 12 F. Supp. 3d at 680 (citation omitted). Plaintiff alleges that Madison employed Dr. Archibald to provide medical exams on boys at the Clubhouse. (*See* Compl. ¶¶ 2, 37, 52.)[6] Plaintiff also alleges that Dr. Archibald committed his first assault against

---

[6] Madison claims in its reply that Dr. Archibald was only a volunteer and never an employee of Madison. (Def.'s Reply 1 n.1.) I must take Plaintiff's allegations in the Complaint as true for purposes of this motion. *See Kassner*, 496 F.3d at 237. Moreover, Madison only raised this issue in a footnote on reply. *See United States v. Restrepo*,

9

Plaintiff on Madison's premises, (*see id.* ¶¶ 85–107), and seeks to hold Madison liable for subsequent assaults at Rockefeller under a theory of negligent referral, (*see* Pl.'s Opp. 15 n.10). Therefore, Plaintiff has established the first and third elements of a negligent supervision and retention claim as to Dr. Archibald's 1952 assault on Madison's premises.

The next question is whether Plaintiff has plausibly alleged that Madison knew or should have known that Dr. Archibald had a propensity to commit sexual abuse. "A cause of action for negligent hiring or retention requires allegations that the employer failed to investigate [an] employee notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate." *Bouchard v. New York Archdiocese*, 719 F. Supp. 2d 255, 261 (S.D.N.Y. 2010) (internal quotation marks omitted). A "plaintiff must plead facts," and not "[c]onclusory allegations," "that show that the employer knew of the employee's propensity for the type of behavior that caused plaintiff's harm." *Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522, 532 (S.D.N.Y. 1998).

Plaintiff does allege that "Madison Square Boys Club knew or should have known of Dr. Archibald's propensity for the sexual abusive conduct that caused Plaintiff's injuries prior to his sexual abuse of Plaintiff." (Compl. ¶ 176.) However, Plaintiff's most compelling allegation in support of Madison's knowledge—that a boy told Madison's Swim Director that Dr. Archibald "was touching boys' genitals"—is improperly pleaded "[o]n information and belief." (*Id.* ¶ 70.) While I can credit allegations upon information and belief "where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible," *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120

---

986 F.2d 1462, 1463 (2d Cir. 1993) ("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review."); *Haywin Textile Prods., Inc. v. Int'l Fin. Inv. and Commerce Bank Ltd.*, 137 F. Supp. 2d 431, 434 n.2 (S.D.N.Y. 2001) ("It is well settled that courts should not consider arguments first raised in a party's reply brief which afford no opportunity for response from the opposing party.").

(2d Cir. 2010) (internal citations omitted), this allegation does not fit either situation. Plaintiff is as likely to know the details of this alleged report to Madison's Swim Director as Madison is, and this is a specific allegation of fact, not an "inference" "based on factual information."[7] Nevertheless, viewing the Complaint as a whole, I find that Plaintiff has plausibly plead facts concerning Dr. Archibald's conduct in the 1940s that show that Madison knew, or should have known, of Dr. Archibald's propensity to abuse children before Dr. Archibald assaulted Plaintiff in 1952. Specifically, I find that if faced with facts showing that an adult was lingering in a children's locker room watching boys undress, (*see* Compl. ¶ 62), openly taking photos of naked children for unspecified reasons, (*see id.* ¶ 67), and examining naked children out of the presence of their parents or other medical professionals, (*see id.* ¶ 113)—and if children were openly discussing how to avoid being alone with that adult, (*see id.* ¶ 69)—a jury could find that "a reasonably prudent person" would investigate.[8]

Madison mainly argues that Plaintiff's allegations are "entirely consistent with legitimate medical examinations and the normal operations of a club like Madison during the relevant time period," and not anything that would have put a reasonably prudent person at the time on notice that Dr. Archibald was engaged in abuse. (Def.'s Mem. 7, 13.) But Madison asks me to consider evidence outside the four corners of the Complaint to reach my own conclusions about

---

[7] Madison makes a series of other arguments about why I should ignore paragraph 70 of the Complaint, (*see* Def.'s Mem. 13–15), but since I disregard the allegation as improperly pleaded, I need not reach Madison's other reasons.

[8] Although not dispositive, I also credit Plaintiff's allegations about non-party Antonucci. (Compl. ¶¶ 77–81). It is true that standing alone, Plaintiff's allegations of Antonucci's open abuse are not themselves proof that Madison separately had notice of Dr. Archibald's abuse. (*See* Def.'s Mem. 15). However, viewing the allegations "in combination rather than piecemeal," the Antonucci allegations are valid circumstantial evidence that Madison did nothing when it was aware of blatant and actionable behavior on its premises. *Lynch v. City of New York*, 952 F.3d 67, 82 (2d Cir. 2020). As for Madison's charge that Plaintiff appears to have copied some allegations from other complaints, (Def.'s Mem. 13–15; *see also supra* note 3), "[t]here is nothing inherently wrong with filing duplicative lawsuits . . . if the harms to be remedied do exist. . . . But those who live by the photocopier shall die by the photocopier." *Mendez v. Apple Inc.*, 18 Civ. 7550 (LAP), 2019 WL 2611168, at *4 (S.D.N.Y. Mar. 28, 2019). If Plaintiff cannot support his allegations with his own evidence, he will ultimately fail.

the norms and customs of the 1950s. (*See, e.g.*, *id.* at 13 n.7 (citing Report of the Joint Committee on Bathing Places of the APHA and the Conference of State Sanitary Engineers, at 1198, 1199 (1926).)  The law does not permit me to consider such information.  "Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  Those materials include "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." *Id.* (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

Ultimately, "because questions concerning what is foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues generally are for the fact finder to resolve." *Becker v. Poling Trans. Corp.*, 356 F.3d 381, 392 (2d Cir. 2004) (internal quotation marks omitted).  Whether a reasonably prudent person would have been on notice of Dr. Archibald's abuse is a question of fact.  *See Murray v. Rsch. Found. of State Univ. of New York*, 723 N.Y.S.2d 805, 808 (4th Dep't 2001) (denying summary judgment on a claim for negligent failure to supervise resulting in sexual abuse of a child because "plaintiff raised issues of fact" about whether the defendant had acted "as a reasonably prudent parent would" have acted in the same situation).  Accepting all well-pleaded facts as true and drawing all reasonable inferences in Plaintiff's favor, *Kassner*, 496 F.3d at 237, Plaintiff plausibly pleads facts to state a claim against Madison for negligent supervision and retention of Dr. Archibald.

### 2. Negligent Referral

Plaintiff argues that Madison is also liable for the abuse Dr. Archibald inflicted on Plaintiff at Rockefeller because "one who refers a patient to a doctor without exercising due care

is liable." (Pl.'s Opp. 15.) Plaintiff cites *Datiz ex rel. Datiz v. Shoob*, 509 N.Y.S.2d 850 (2d Dep't 1986), *aff'd*, 71 N.Y.2d 867 (1988), and *Graddy v. New York Med. College*, 243 N.Y.S.2d 940 (1st Dep't 1963), as support for this proposition. As an initial matter, a review of these cases demonstrates that neither case stands for the proposition Plaintiff asserts. In *Datiz*, a doctor was held liable for his own negligent misdiagnosis of a patient, not for his negligent referral to another doctor. 509 N.Y.S.2d at 852. In *Graddy*, the appeals court actually reversed a jury verdict holding the referring doctor liable for the negligence of the treating doctor. 243 N.Y.S.2d at 940. Both cases quoted a treatise saying:

> A physician who is unable or unwilling to assume or continue the treatment of a case, and recommends or sends the patient to another physician who is not his employee, agent, or partner, is not liable for injuries resulting from the latter's want of skill or care unless he did not exercise due care in making the recommendation or substitution.

*Graddy*, 243 N.Y.S.2d at 944 (quoting 70 C.J.S. Physicians and Surgeons § 54d);[9] *Datiz*, 509 N.Y.S.2d at 854 (Lawrence, J., concurring in part and dissenting in part) (same).

Regardless, Plaintiff fails to allege facts that establish the elements for a negligent referral claim. Plaintiff does not allege that Madison employed another physician, that the other physician was "unable or unwilling" to treat Plaintiff, or that Plaintiff was even undergoing ongoing treatment at Madison. (*See generally* Compl.) Indeed, Plaintiff does not allege who specifically at Madison "recommend[ed]" that Plaintiff's parents seek treatment for Plaintiff from Dr. Archibald at Rockefeller. (*Id.* ¶ 110.) In fact, elsewhere in the Complaint, Plaintiff alleges that Dr. Archibald was the one actively soliciting new patients. (*Id.* ¶ 71 ("He also

---

[9] The treatise has since been revised and reorganized. The current version of the treatise states, "A physician who is unable or unwilling to assume or continue the treatment of a case, and recommends or refers another physician, generally is not liable for injuries resulting from the latter's lack of skill or care, unless the recommended physician is in the recommending physician's employment, or is his or her agent or partner." 70 C.J.S. Physicians and Surgeons § 128 (Mar. 2022 update).

obtained contact information for boys from [Madison] and reached out to their parents, soliciting them to bring their sons to Rockefeller for 'growth studies.'").) Assuming for the sake of argument that a physician can be liable for failing to exercise due care in making a referral, I find that Plaintiff has not stated a plausible claim against Madison for negligent referral to Dr. Archibald.

### 3. Gross Negligence

"Gross negligence is conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Am. Tel. & Tel. Co. v. City of New York*, 83 F.3d 549, 556 (2d Cir. 1996) (internal quotation marks omitted). "Recklessness in the context of a gross negligence claim means an extreme departure from the standards of ordinary care, such that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 61 (2d Cir. 2012) (internal quotation marks omitted). "As such, 'a party is grossly negligent when it fails to exercise even slight care or slight diligence.'" *Mali v. Brit. Airways*, No. 17 CIV. 685 (KPF), 2018 WL 3329858, at *8 (S.D.N.Y. July 6, 2018) (quoting *Goldstein v. Carnell Assocs., Inc.*, 906 N.Y.S.2d 905, 905–06 (2d Dep't 2010)). "The issue of gross negligence is a question of fact for a jury to determine." *Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 136 F. Supp. 2d 253, 256–57 (S.D.N.Y. 2001) (citing *Gentile v. Garden City Alarm Co.*, 541 N.Y.S.2d 505, 509 (2d Dep't 1989)).

Since Plaintiff has plausibly alleged that Madison was on notice of Dr. Archibald's propensity to sexually abuse vulnerable children yet continued to allow Dr. Archibald unfettered and unchaperoned access to children within Madison's care, a jury could find that Madison showed "a reckless disregard for the rights of others" verging on "intentional wrongdoing." *Am.*

*Tel. & Tel.*, 83 F.3d at 556.  A jury could also find that Madison "fail[ed] to exercise even slight care or slight diligence," *Mali*, 2018 WL 3329858, at *8, by failing, for example, to require that another medical professional assist Dr. Archibald with the physical exams, as was Madison's stated policy.  (*See* Compl. ¶ 49 (citing Madison Square Boys Club, 1956 Annual Report 6 (stating that medical exams would be "given in [Madison's] clinic by a resident medical student under the supervision of a physician")).)  In sum, I find that Plaintiff has alleged a plausible claim against Madison for gross negligence with regard to Madison's supervision and retention of Dr. Archibald.

### IV.     Conclusion

For the foregoing reasons, Madison's motion to dismiss is DENIED as to Plaintiff's claims for negligence and gross negligence on the theory that Madison negligently supervised and retained Dr. Archibald, resulting in Dr. Archibald's assault of Plaintiff on Madison's premises in 1952.  Madison's motion to dismiss is GRANTED as to Plaintiff's claims for sexual abuse, assault, and battery on a vicarious liability theory, and as to Plaintiff's claims of negligence and gross negligence on a negligent referral theory.  The Clerk of Court is respectfully directed to close the gavel pending at Doc. 16.

SO ORDERED.

Dated: April 6, 2022
      New York, New York

                                               Vernon S. Broderick
                                               United States District Judge